UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **JEREMY WADE STORY** ) | |
|     Plaintiff, ) | |
| v.  ) | CIVIL ACTION NO. 1:23-cv-01120 |
| ) | |
| **WILLIAMSON COUNTY** ) | |
| **JUDGE BILL GRAVELL, ET AL** ) | |
|     Defendant. ) | |

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS UNDER RULE 129(b)(6)

Defendants County Judge Gravell, Sheriff Gleason, and Deputies Casey and Briggs file this reply to the plaintiff's response to their motion to dismiss under Rule 12(b)(6). After consideration of the First Amended Complaint, the Motion to Dismiss Under Rule 12(b)(6), the Response to that motion, and this Reply, it is apparent that the allegations of the complaint are largely conclusory, do not state a plausible claim, and are often contrary to fact when examined in light of the documents referenced in the First Amended Complaint

**I.**  **The response to the motion to dismiss does not dispute the appropriateness of considering the actual documents referred to in the amended complaint along with the facts contained in them.**

While this reply will address the affirmative arguments in the Plaintiff's Response Opposing Defendants' Motion to Dismiss ("Response") (Dkt. 12), it is appropriate to begin by noting what the Response does not address or dispute.

1

First, the Response does not dispute the appropriateness of the Court's consideration of the material contained in the attachment to the motion to dismiss, namely (1) the arrest warrant, (2) the jail's COVID policy, and (3) the video record of the commissioners court meeting from which Mr. Story was ejected.

Second, the Response does not address the fact that Mr. Story's claim that Sheriff Gleason sought to acquire the arrest warrant because he signed it is contradicted by the fact that the face of the warrant does not contain his signature. Motion to Dismiss, Dkt. 11, at 8; Dkt. 11-1, Exh. A.

Third, the Response does not challenge the point made in the motion to dismiss that at the time of Mr. Story's arrest and overnight confinement in the jail, the COVID policy did not preclude acceptance of persons charged, as Mr. Story was, with a Class A misdemeanor. In fact, the list of offenses that would not be accepted into the jail facility had not included Class A misdemeanors for almost seven months prior to the time of Mr. Story's arrest. Motion to Dismiss Appendix, Dkt. 11-1, Exh. B-1. Beginning May 3, 2021—four-and-a-half months before his arrest—the policy provided that the jail had "return[ed] to normal receiving and processing, accepting misdemeanor C and B charges and warrants." *Id.,* at Exh. B-2. Since the jail's COVID policy, on its face, indicated that any restriction on accepting persons arrested on Class A misdemeanor warrants had expired long before Mr. Story's arrest and confinement, all of his claims for relief based on a violation of the COVID policy cannot be sustained. *See, e.g.,* First Amended Complaint, Dkt. 5, at ¶¶ 23, 24, 34, 37, 39, 46, 49, 52, 54, and 59 (alleging violation of COVID policy). The same is true of Plaintiff's claim that Sheriff Gleason was involved in constitutional violations because "[o]nly WC Sheriff Gleason and a few others would be able to approve overriding the COVID jailing policy against booking misdemeanors," as there

was no policy to override in September of 2021 when Mr. Story was arrested. *Id.*, ¶ 46; *see also* ¶ 52.

Because the plaintiff has failed to respond to any of these points, he has waived any argument in opposition. *Magee v. Life Ins. Co. of N. Am.*, 261 F.Supp.2d 738, 748 n. 10 (S.D. Tex. 2003) (citations omitted)("By analogy, failure to brief an argument in the district court waives that argument in that court."); *see also Kellam v. Metrocare Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), aff'd sub nom. *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on that issue and thus waived the argument).

**II.     Mr. Story's response asserts he avoids dismissal because he has pled a plausible claim. His pleading, though, is conclusory, implausible, and inconsistent with the facts in the record.**

To survive a motion to dismiss, Mr. Story must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This standard, though, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The pleading must be more than legal conclusions. *Id.* To the extent the pleadings consist of legal conclusions, they are not entitled to the assumption of truth. *Id.*, at 680. If the pleading contains non-conclusory, factual allegations, they "must be enough to raise a right to relief above the speculative level, *see* C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[The] pleading must

contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")". *Twombly,* 550 U.S. at 555.

The type of pleading that is not sufficient to survive a motion to dismiss can be seen in the Supreme Court's discussion in *Iqbal*, which is a particularly instructive case since, like the instant case, it involved an arrest and detention that allegedly violated the plaintiffs' constitutional rights. There, the Court explained:

> We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. Respondent pleads that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The complaint alleges that Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it. These bare assertions, much like the pleading of conspiracy in *Twombly,* amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim, namely that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." As such the allegations are conclusory and not entitled to be assumed true. To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

*Iqbal,* 556 U.S. at 680-81 (internal citations omitted).

### A. Mr. Story has not stated a plausible claim against Deputies Casey and Briggs

The pleadings Mr. Story cites as demonstrating that he has stated plausible claims for relief are similarly conclusory. For example, quoting paragraph 24 of his First Amended Complaint, he alleges that Deputies Casey and Briggs knowingly conducted a false arrest because "RRISD Superintendent Azaiez improperly encouraged the Williamson County Judge to issue an improper warrant for Plaintiff's arrest by Defendants Casey and Briggs as Azaiez's 'personal police force to create a false affidavit, *secure an arrest warrant,* and then encouraged the retaliatory arrest." Response, Dkt. 12, at ¶ 5. First, this is the sort of bare, conclusory

allegations found by *Iqbal* to be disentitled to the presumption of truth. Moreover, although Mr. Story argues that he has pled that Deputies Casey and Briggs were acting as Superintendent Azaiez's "personal police force to . . . secure an arrest warrant," the actual pleading (¶ 24 of the First Amended Complaint, Dkt. 5), refers instead to the Round Rock Independent School District law enforcement unit as the school superintendent's "personal police force," not the sheriff's department. Indeed, paragraph 24, while included in the First Amended Complaint in this case was lifted almost verbatim[1] from the First Amended Complaint in Mr. Story's suit in this court against Round Rock ISD officials. *Story and Clark,* No. 1-22-cv-00448-DAE, Dkt. 20, at ¶ 118. Allegations regarding the supposed actions of the Round Rock ISD police force[2] in *Story and Clark* were simply recycled to apply to sheriff's department. Such generic allegations, blindly reasserted without regard for any actual conduct of the substituted defendants, plainly fail under the Rule 8 pleading standard. *Iqbal,* 556 U.S. at 680-81

Second, not only are the plaintiff's allegations against the sheriff's department *not* entitled to a presumption of truth because they are conclusory, they are also properly disregarded because they are affirmatively contradicted by the facts shown by the affidavit and warrant that are referenced in the plaintiff's complaint. *Doe v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d 359, 370 (S.D. Tex. 2023) ("If the plaintiff's allegations are contradicted by facts

---

[1] The changes that prevent it from being verbatim are (1) references to plaintiffs in *Story and Clark* were plural rather than singular, (2) the verb "encourage" was changed from the past tense to the present, and (3) the original version in *Story and Clark* alleged that the superintendent communicated *"*with the Williamson County Judge and other county officials while the version in this case omitted "and other county officials."
[2] The paragraph does not expressly name the Round Rock ISD police force, but since it reports to the school district superintendent, it is logical that the reference to the superintendent's "personal police force" is to the one that is subject to his supervision. Further, the paragraph states that the "personal police force" was employed by the superintendent to create the affidavit and to secure an arrest warrant. As reflected on the face of the warrant both of those tasks were done by ISD police officers. Motion to Dismiss, at DKT.11-1, Exh. A.

disclosed by a document attached to the complaint or by facts disclosed by a document attached to the motion to dismiss that is central to the claim and referenced by the complaint, then the plaintiff's contradicted allegations are not accepted as true), citing *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss); *see also*, *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (courts are "not required to accept factual allegations that are 'blatantly contradicted by the record.'") (internal citation omitted) While factual allegations may enjoy a presumption of truth, that presumption is overridden when, as here, the actual document included in the pleadings blatantly contradicts the allegations; *Harmon v. City of Arlington,* 16 F.4th 1159, 1163 (5th Cir. 2021) (adopting video recording that contradicted an assertion of fact in considering a 12(b)(6) motion). Here, Story's allegations that Defendants Casey and Briggs supplied the underlying facts for, or otherwise secured, the warrant for his arrest are blatantly contradicted by the supporting affidavit and warrant, which issued solely on information provided by the Round Rock I.S.D. Police Department. Dkt. 11-1, Exh. A.

  Next, Mr. Story asserts that he has stated a plausible claim for relief against Deputies Casey and Briggs because they "had actual knowledge of the false nature of the arrest and their statements show their intent to chill Plaintiff from speaking up further." Response, Dkt. 12, at ¶ 5. As support for this conclusion, Mr. Story cites to paragraph 22 of his First Amended Complaint and says "Deputies Casey and Briggs, while arresting him, made references to Dustin Clark as Plaintiff's 'money man helping you with that campaign' and 'We are also arresting your 'money man' who lives near you." *Id., see also* ¶ 6 (claiming that "comments by Defendants Casey and Briggs are significant in showing their personal knowledge of the situation,

involvement, and intentions to knowingly execute a false warrant while seeking to arrest Plaintiff and his 'money man' in support of Azaiez.").[3] It is not at all clear how a statement that they were also serving an arrest warrant on Mr. Clark or a belief that Mr. Clark was a financial backer of a potential campaign does anything to plausibly suggest that the deputies had knowledge of a false warrant for Mr. Story's arrest. Even if one could rationally infer that the statements were consistent with knowledge of a false warrant or of a conspiracy to deprive Mr. Story of his rights, consistency with a desired conclusion is not enough to meet the "plausibly suggest test" as would be necessary to avoid dismissal for failure to state a claim. *Twombly,* 550 U.S. at 557. As Story's complaint is devoid of any non-conclusory assertions from which the Court could plausibly infer liability on behalf of the deputy defendants, he has failed to state a viable claim against either Casey or Briggs.

### B. Mr. Story similarly fails to state a plausible claim against Sheriff Gleason

The plaintiff cites to six paragraphs (¶¶ 22, 43, 46, 47, 60, and 61) of the First Amended Complaint as establishing that he "has adequately pleaded a sufficient causal connection between Defendant Gleason and the constitutional violation." Response, Dkt. 12, ¶ 9. The allegations in those paragraphs do not, however, amount to a plausible claim of a violation.

Paragraph 22 alleges that Deputy Briggs stated that they were also arresting Dustin Clark who Briggs referred to as Story's money man for Story's campaign for Congress. Even if the

---

[3] Paragraph 6 of Mr. Story's Response also alleges that the "[i]ndependent intermediary doctrine does not apply" because of the comments by the two deputies show their personal knowledge of the false nature of the arrest warrant, and it cites *Beck v. State of Ohio,* 379 U.S. 89, 96-97 (1964) for the proposition. It is not clear how the comments about arresting the "money man" relate to or suggest that the warrant was improper. Further, *Beck* offers no insight into the applicability of the independent intermediary doctrine. That doctrine applies to arrests pursuant to a warrant, but the *Beck* opinion and its discussion relates to warrantless arrests.

paragraph is given the presumption of truth, it does not suggest involvement of Sheriff Gleason or a denial of Mr. Story's constitutional rights.

Paragraph 43 states that the plaintiff "contends that Sheriff Mike Gleason, who signed the warrant, with Casey and Briggs, acted in concert and conspiracy, and were jointly and severally responsible for the constitutional harms caused to Plaintiff." First Amended Complaint, Dkt. 5, ¶ 43. Except for the allegation that Sheriff Gleason signed the warrant—a claim that is untrue as shown by simply examining the warrant found at the Motion to Dismiss, Dkt. 11-1, Exh. A—the paragraph is entirely a legal conclusion and, as such, is insufficient to avoid a dismissal for failure to state a claim.

Paragraph 46 again alleges that Sheriff Gleason signed the warrant. His signature appears nowhere on the warrant, thus blatantly contradicting the plaintiff's allegations. *Univ. of Texas M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d at 370; *Harmon,* 16 F.4th at 1163. Gleason's printed name is stamped on the return portion of the warrant showing that Mr. Story was delivered to the jail. But even if that were considered to be a signature, it has nothing to do with the issuance of the warrant. The paragraph also alleges that Mr. Story was arrested during a COVID policy against arresting suspects on misdemeanor charges and that only Sheriff Gleason could authorize overriding the policy. As indicated in the document referenced in the complaint and attached to the motion to dismiss, no such policy existed at the time of Mr. Story's arrest and overnight incarceration. *See id;* Motion to Dismiss, Dkt. 11-1, Exhs. B-1 and B-2.

Paragraph 47 alleges that "the speed and sweep of the arrest would have required Defendant Gleason's direct involvement and approval." First Amended Complaint, Dkt. 5, ¶ 47. This allegation is nothing more than an unsupported assumption as to the standard practices of the sheriff's office and its internal procedures paired with speculation as to motive. It does not

rise above the level of speculation and suspicion as would be necessary to state a plausible claim. *Twombly,* 550 U.S. at 555.

Paragraph 60 asserts that the Sheriff Defendants acted in concert with the Round Rock Police Department and the Round Rock ISD to avoid investigating the school district in response to Mr. Story's request that they do so. He suggests that if the sheriff's office had conducted an investigation when he made his complaint it would have adopted his interpretation of events and would have declined to execute the warrant issued by the magistrate. He cites to no authority that suggests a law enforcement agency must conduct an investigation on any complaint it receives or that having done so would have overcome the independent intermediary doctrine. Here an independent judicial officer made the determination that there was probable cause to arrest, and the sheriff's office was entitled to rely on that determination.

Finally, Mr. Story cites to paragraph 61, which provides:

> As explained above, Defendants Sheriff Mike Gleason, Officer B. Casey, Officer Briggs, and Williamson County Sheriff's Office violated the 14th Amendment. *Village of Middlebrook,* 528 U.S. at 564. WC Defendants arbitrarily discriminated against Defendant [sic].

First Amended Complaint, Dkt. 5, ¶ 61. The paragraph is a legal conclusion, is not entitled to a presumption of truth, and does not state a plausible claim for relief sufficient to survive a motion to dismiss. *Iqbal,* 556 U.S. at 678-79.

**C. Mr. Story has not stated a plausible claim that Judge Gravell violated his rights**

The claims that Judge Gravell violated Story's First Amendment rights by having him removed from the commissioners court meeting have been discussed at pages 15-20 of the motion to dismiss and need not be revisited at length.

In his response to that motion, though, Mr. Story repeatedly disputes that the County Judge had warned him not to violate the decorum policy. In fact, however, as pointed out previously and as shown in the video record of the meeting, the Judge twice explained the rules of decorum. *See* video at 2:35 and 17:01. The warning and explanation of the rules were directed to the entire audience, which included Mr. Story. Although Mr. Story was not called out by name when the rules of decorum were explained, he was warned along with everyone else in the room. Indeed, had the Judge directed a warning to Mr. Story prior to any outburst, one might suspect that he was likely to be the subject of retaliation, but instead he was warned in the same manner as every other attendee. The fact that the Judge expected the entire audience to adhere to the warning and rules is evidenced when the first person was ejected for a violation. *See* video at 35:04. The Judge admonished the offender that he had heard him explain the rules against outbursts and applause but that he had chosen not to honor that warning. The Judge further said that he had given the individual fair warning. This is the same type of discussion about a prior warning that occurred with Mr. Story.

Finally, we note that Mr. Story begins the discussion in his Response about the claims against Judge Gravell by stating "There is no dispute that Judge Gravell ejected Plaintiff Story from the Commissioners Court in Retaliation for Plaintiff's viewpoint." Response, Dkt. 12, ¶ 11. We do not believe that anyone could read the motion to dismiss and conclude that the defendants have taken any position other than vigorously rejecting any claim of viewpoint discrimination. Put simply, Story fails to plead specific facts to show that Judge Gravell removed him from the meeting for any reason other than the Judge's good faith belief that Story was violating the established and admonished rules of decorum, and the video recording belies any reasonable

inference to the contrary. Story has therefore failed to plead a claim for which the Court may grant relief against Gravell.

## Conclusion

The First Amended Complaint does not state a claim on which relief can be granted, and the motion to dismiss should be granted.

Respectfully submitted,

/s/ C. Robert Heath
C. Robert Heath
State Bar No. 09347500

Gunnar P. Seaquist
State Bar No. 24043358

Bickerstaff Heath Delgado Acosta LLP
3711 S. Mo-Pac, Building One, Suite 300,
Austin, Texas 78746
Tel. (512) 472-8021
Fax. (512) 320.5638

**Counsel for Williamson County, Judge Bill Gravell, et al.**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument has been filed via CM/ECF electronic filing and Certified Mail, Return Receipt Requested on this the 29th day of December 2023, to:

Warren V. Norred, P.E.
NORRED LAW, PLLC
515 East Border Street
Arlington, Texas 76010
817.704.3984 office
817.524.6686 fax
wnorred@norredlaw.com

                                              /s/ C. Robert Heath
                                              C. Robert Heath